SAVOIE, Judge.
Mrs. Athalie S. Letard died testate on December 14, 1981, leaving neither descendants nor ascendants. On March 14, 1983, the executor of the estate filed a petition for declaratory judgment seeking a declaration as to the validity of a $40,-000.00 inter vivos donation and of a mortis causa donation, by legacy, of Mrs. Letard’s house and certain other property. The trial court found the inter vivos donation and the legacy to be invalid under La.Civil Code articles 1489 and 1491. We affirm.
The facts of the present case show that Mrs. Letard was an elderly widow who lived in Amite. Dr. L.E. Stringer began treating Mrs. Letard in January of 1978. Dr. Stringer testified that he treated Mrs. Letard for pulmonary edema, which he stated is an advanced form of congestive heart failure. He stated she had pronounced cases of pulmonary edema in February and March of 1978. He also testified that in September of 1980 and in May of 1981, she had very crucial episodes of pulmonary edema. Dr. Stringer then began making home visits to Mrs. Letard, including one period from August 4, 1981 to September 13, 1981 during which period he made house calls to Mrs. Letard for 41 consecutive days.
On August 7, 1981, a check in the amount of $40,000.00 was drawn on Mrs. Letard’s account. The check was payable to Mrs. Louise Stringer, Dr. Stringer’s wife. Mrs. Stringer testified that she re *770 ceived the check and ultimately deposited it in a savings account.
Mrs. Letard left a statutory will which was dated September 4, 1981. In this will was a disposition which stated: “I will and bequeath unto Mrs. Louise Stringer my home, the lot upon which it is situated and the adjoining property owned by me, and my dining room table and eight chairs.”
It is this disposition and the $40,000.00 inter vivos donation which are the subjects of the dispute in this case. The trial court found that Dr. Stringer was the treating physician of Mrs. Letard at the time of her death, and that under La.C.C. art. 1489, any donation or bequest made to him would be null. The trial court further found that Mrs. Stringer was a person interposed within the clear provision and intent of La.C.C. art. 1491. The trial court granted judgment in favor of the executor ordering the $40,000.00 returned to the succession, this being the amount of the inter vivos donation, and decreeing the disposition in the will null and void.
Dr. and Mrs. Stringer have appealed from the judgment of the trial court, alleging fifteen assignments of error. For the reasons hereinafter assigned, we affirm the action of the trial court.
In order for this incapacity of attending doctors and ministers, as provided in Louisiana Civil Code Article 1489, to apply, certain conditions must be met. L. Oppenheim, Successions and Donations, § 117 in 10 Louisiana Civil Law Treatise, 224 (1973). Professor Oppenheim lists the conditions which must be met. First, the doctor must have attended the deceased during his last sickness. Secondly, the donation, either mortis causa or inter vivos, must have been made during the last sickness; the nullity being eliminated if the will is drafted before the sickness. Finally, the sick person must die of the particular sickness; a recovery or death from a cause other than the particular illness releases the incapacity. The record indicates that all of the above conditions have been met in the present case.
(1) The doctor must have attended the deceased during his last sickness. The trial court made a finding of fact that Dr. Stringer was the treating physician of Mrs. Letard continually for a period of years up to and including the day of her death. The record does support this finding. Dr. Stringer submitted a statement which showed 79 house calls from November of 1980 to November of 1982. The statement contains the note, “This represents probably one-half of home visits November 1980 thru November 1981.” Additionally, Dr. Stringer testified that he considered Mrs. Letard as his patient and that he attended to her in a professional capacity on the morning of her death, December 14, 1981. This is ample evidence to conclude that Dr. Stringer attended Mrs. Letard during this last sickness.
(2) The donation, either inter vivos or mortis causa, must have been made during the last sickness; the nullity being eliminated if the will is drafted before the sickness. In this case, the inter vivos donation was made on August 7, 1981, and the other disposition was contained in a will dated September 14, 1981. By the doctor’s own statement, he began treating Mrs. Letard for pulmonary edema in 1978 and, in fact, made professional visits to Mrs. Letard on both of the above dates. This is strong evidence that both donations were made during the last illness.
(3) The sick person must die of the particular sickness; a recovery or death from a cause other than the particular illness releases the incapacity. At the trial of this matter, Dr. Stringer attempted to show to the trial court that Mrs. Letard died not from congestive heart failure, but actually died from choking on food she was eating for lunch.
The evidence at trial showed that Dr. Stringer was the physician who signed Mrs. Letard’s death certificate. Dr. Stringer testified at trial that he placed “ASHD” (arteriosclerotic heart disease) and “CHF” (congestive heart failure) in the space for cause of death. Additionally, in an earlier matter in the proceedings of this succes *771 sion, Dr. Stringer entered into a stipulation with the parties to that particular matter that Mrs. Letard died of congestive heart failure.
On the day of the trial, Mrs. Le-tard’s maid, who was with Mrs. Letard when she died, testified that Mrs. Letard was having her lunch just prior to her death. Dr. Stringer testified that he had not spoken with the maid until the day before the trial. He stated that if he had spoken with the maid before completing the death certificate, he would not have found that Mrs. Letard died of congestive heart failure. The trial court obviously felt that Dr. Stringer’s determination of the cause of death made at the time of death was more credible than Dr. Stringer’s later opinion which was formulated with knowledge of this particular litigation. The record supports the trial court’s determination and we agree.
Under La.C.C. art. 1489, there are two important exceptions to the general prohibition against donations to doctors and ministers treating the deceased during the last illness. The first exception is remunerative donations. The record in the present case shows that Dr. Stringer submitted a detailed statement showing the dates and charges for house calls made for over a year prior to her death. The evidence showed this bill had been paid. It is clear that the inter vivos donation and the disposition in the will were not remuneration. Dr. Stringer was paid for his services rendered.
The other exception in article 1489 is in the case of a universal disposition in case of consanguinity. The disposition in this case was a specific bequest of Mrs. Letard’s house and dining room furniture. This is not a universal disposition and, therefore, this exception does not apply.
Finally, the trial court found that Mrs. Stringer was a person interposed under La.C.C. art. 1491. Mrs. Stringer attempted to rebut this by claiming that the donation was remunerative in nature. Mrs. Stringer claimed that she provided friendship and counseling to Mrs. Letard and that these donations were remuneration for her services. The trial court found this was not so, and the record supports this conclusion.
Dr. and Mrs. Stringer also appeal the trial court’s assessment of one-half of the costs of the proceeding against them. Under La.C.C.P. 2825, in all contradictory succession proceedings, the costs are to be paid by the party cast, unless the court directs otherwise. The trial court did not abuse its discretion in casting the Stringers for one-half of the costs of the proceedings.
The Stringers also raise on appeal the constitutionality of La.C.C. arts. 1489 and 1491. It is well settled that a litigant who fails to plead the unconstitutionality of a statute in the trial court cannot raise the constitutional issue in an appellate court. State v. Henry, 443 So.2d 657 (La.App. 3d Cir.1983), and cases cited therein. Thus, we will give no further consideration to this assignment of error.
Accordingly, the judgment appealed from is affirmed at appellant’s costs.
AFFIRMED.